Bruce A. Anderson, ISB #3392
ELSAESSER ANDERSON, CHTD.
Attorneys at Law
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID  83815
Tel:    (208) 667-2900
Fax:    (208) 667-2150

Attorneys for Debtor-in Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF IDAHO

In re:

Dick Campbell Company

        Debtor-in-Possession.

Case No.:  17-00756-JMM

Chapter 11

**RESPONSE TO OBJECTION TO CONFIRMATION**

COMES NOW Dick Campbell Company, ("Campbell Company"), the Debtor and Debtor-in-Possession, in the above captioned case, by and through its attorney, Bruce A. Anderson of Elsaesser Anderson, Chtd., and hereby submits this memorandum in support of confirmation of the First Amended Chapter 11 Plan ("Plan") and in response to Polara's Objection to Confirmation (Docket No. 122).

**I. BACKGROUND**

Campbell Company is a closely owned corporation located in Boise, Idaho, manufactures pedestrian crosswalk related hardware and software components for sale throughout the United States.  Campbell Company employs and supports 47 employee families.  The company is solely owned by Phil and Angie Tate, who purchased the "shell" of the company from a relative from Seattle, and moved the company to Boise, Idaho.  The manufacturing product changed over time to what it is today.

**RESPONSE TO OBJECTION
TO CONFIRMATION -1**

Polara Engineering, Inc., ("Polara") Campbell Company's main competitor, sued and prevailed in a patent infringement lawsuit in the U.S. District Court, District of California. A jury decision awarded $697,000.00 in actual damages, and $980,000.00 in enhanced damages to Polara for a total award of roughly $1.7 million dollars. This Chapter 11 bankruptcy case seeks to deal with this debt, among others.

Campbell Company seeks confirmation of its First Amended Plan of Reorganization (Docket No. 101). The First Amended Disclosure Statement (Docket No. 100) was approved by the Court on January 8, 2018 (Docket No. 106). The Objection to the Disclosure Statement filed by Polara (Docket No. 98) was resolved by agreement, with additional language placed in the First Amended Disclosure Statement as appropriate. In addition, the U.S. Trustee's Office informally requested additional disclosures, which disclosures were added to the First Amended Disclosure Statement and First Amended Plan of Reorganization.

Polara's objection to confirmation is broad sweeping, and argues to the Court various issues, including whether the Plan was proposed in good faith, whether the budget is *too conservative,* whether interest rates are appropriate, and whether the Plan unfairly discriminates against Polara. The main thrust of the bad faith argument is that the bankruptcy was filed instead of the posting of a supersedeas bond in the State Court litigation. Additionally, Polara argues that Campbell Company can pay more in a shorter period of time, and with more interest. However, Campbell Company's financial situation is stretched to the limits, and it is believed that the evidence will show that the payments as proposed are reasonable in amount and time, and the interest rate is fair.

Polara's judgment is in the amount of $1.7 million dollars, the matter is now on appeal. Oral argument is scheduled for April 3, 2018, and it is anticipated that a decision will be rendered by the U.S. Court of Appeals for the Federal Circuit within months after argument.

**RESPONSE TO OBJECTION**
**TO CONFIRMATION -2**

What Campbell Company has proposed as to Polara is an "either/or" Plan where the funds are parked in escrow, over a reasonable period of time, and once the final determination is made, whatever the amount is, the funds will be released to Polara per the Plan.

Campbell Company will testify that the Polara judgment and the bankruptcy have had an adverse affect on its business.  First, during the bankruptcy, the Lead Engineer left employ in July 2017.  Next, the long time Controller for the business left in September 2017 for a better job.  Wages were frozen at Campbell Company, but job duties increased due to bankruptcy reporting, and there was no real hope for an increase in compensation while Campbell Company was in bankruptcy.  Next, the Marketing Director for Campbell Company also left employment in March 2018 for greener pastures.  Finally, the current accountant left employ on April 5, 2018.  These losses of key personnel place Campbell Company in a major lurch, which it will work its way through, but, at this moment in time, the company is in a difficult financial position due to lack of these key employees.  Sales are down, and despite Polara's argument, the trend is not skyrocketing upward.  Campbell Company has lost its line of credit, and now saves cash for its uneven sales and production needs.

Campbell Company seeks to pay off the Polara debt, the largest creditor by far, in a manner that will keep this company viable and as an employer of many persons in Boise, and will pay off all debts, not just Polara.  In addition to the Polara judgment, Campbell Company has a small amount of unsecured general creditors, and a large amount of secured debt to Wells Fargo Bank.  A large portion of the Wells Fargo debt is going to be paid over time, yet Polara believes it should insert itself in a greater priority and have its debt paid off earlier, with a large down payment.  This just cannot happen under the priority scheme, nor would Wells Fargo approve.

**RESPONSE TO OBJECTION
TO CONFIRMATION -3**

Campbell Company is well versed in the requirements of the Bankruptcy Code and the requirements of good faith in order to get its Plan confirmed.  Throughout this bankruptcy Polara has been involved at every turn.  Polara has conducted substantial depositions of Dick Campbell Company, Campbell on McGregor, LLC, Phil Tate and Angie Tate, and the company CPA, Thomas South.  Written discovery has been made, and fully responded to.  Discovery has been made of the accounting firm, and fully responded to.

When Campbell Company moved to extend the exclusivity period, it was objected to by Polara, and finally resolved.  When the Disclosure Statement was proposed, it was objected to by Polara, and finally resolved.  Now that the First Amended Plan of Reorganization is proposed for confirmation, an objection is made by Polara, and it will likewise be responded to in this memorandum, and by testimonial and documentary evidence presented at the confirmation hearing.  What Campbell Company has not done is act in bad faith prior to or during the course of this bankruptcy, or in proposing the Plan.  To the contrary, it has been open, transparent and has fully responded to every inquiry Polara has made from the time this bankruptcy was filed in June of 2017 to the present day.

Accordingly, Campbell Company's First Amended Plan of Reorganization should be confirmed and payments should start to all creditors.  There may be some "tweaking" that will be made through the Confirmation Order, by agreement with the parties, but what Campbell Company has presented to this Court and the creditors is a Plan that is confirmable, offered in good faith, and fairly treats all of its creditors.

## II.  RESPONSE TO PLAN AND DISCLOSURE STATEMENT ERRORS, WHEN RECTIFIED ESTABLISH THAT THE DEBTOR DOES HAVE THE MEANS TO PAY POLARA ON A MUCH MORE REASONABLE TIMEFRAME

The first items discussed by Polara are payments made for Mr. Tate's personal vehicle. The vehicle has been paid for by the business since acquisition, and in a manner approved by the

**RESPONSE TO OBJECTION
TO CONFIRMATION -4**

company CPA based on the fact that its use was primarily related to the company.  Polara also argues that other personal expenses are being funneled through the company.  This is false.  All expenses have been fully disclosed on monthly operating reports, and no personal expenses are being paid for by the company.  There may be expenses that are in Phil Tate's personal name, but the expenses are made on behalf of the company.  Again, there has been full disclosure of this in the monthly operating report, at the two Section 341 First Meetings of Creditors, in response to the Office of U.S. Trustee's inquiry, which response was additionally sent to Polara counsel.  In the past, Campbell Company has possibly paid a minor amount of personal expenses of Phil Tate, which, at the end of the tax year, adjustments were made to reflect those expenses paid as additional compensation.  This is not unusual for a solely held corporation, and the certified public accountant made sure that all was kosher for tax and business reporting.  This practice ceased after the bankruptcy filing.

     Expenses paid to Campbell on McGregor, LLC are correctly stated in the Objection at $20,000.00 per month, with a $6,000.00 credit against the loan, determined with approval of the company CPA.  The property is leased on a triple net lease, and these payments cover the loan payment, taxes and insurance.  Polara is correct that the $6,000.00 credit against the loan is a non-cash expense and could be reflected differently, such as depreciation and amortization.  However, even with this added back in, it does not materially tip the scales in favor of reducing Polara's payment schedule from six years to three years, as is requested by Polara.

     With respect to the employment of special appellate counsel, there is no violation, as alleged by Polara, of any court order.  The Application to Employ Special Counsel, at Docket No. 15, is entirely transparent as to the pre-petition agreement with appellate counsel Chris Holland, which argument was entered into well before the bankruptcy filing.  After a lengthy hearing, not attended by Polara, the Court made clear that Chris Holland's employment was

**RESPONSE TO OBJECTION**
**TO CONFIRMATION -5**

approved, however, the flat fee retention agreement would be subject to further application, notice, hearing and approval of the Court.  That the cross-appeal was abandoned mid-stream by Polara does not mean that the $35,000.00 is to be returned to Campbell Company.  Further, it is expected that Chris Holland's application for final compensation will show that the $185,000.00 was fully earned, and possibly some or all of the $35,000.00.  The net result is it is unknown, what, if any, of the prepaid attorneys' fees would be returned, and could be used in the budget.  It is expected that none of it will be.

### III.  ARGUMENT

### 1.  RESPONSE TO "SECTION 1129(a)(1): THE PLAN MUST COMPLY WITH OTHER PROVISIONS OF THE CODE"

There has been no attempt to modify, or as Polara states "manufacture," an impaired class as to the Wells Fargo claim at Class 1a, at Docket No. 101.  There is no attempt to modify treatment of this claim in any manner.  As it is explained, Campbell Company is the guarantor and provides collateral for an obligation of Campbell on McGregor, LLC, and Campbell Company in the Plan acknowledges that obligation, and the fact that it is secured by property of the bankruptcy estate.  Campbell on McGregor, LLC is making the payments on this loan, not Campbell Company.  As is set forth in Article IV., at page 7 of the Plan, Class 1a is unimpaired and is deemed to accept.  Thus, it is unknown what Polara is arguing as far as Campbell Company "manufacturing" yet another impaired class to attempt to reach the cram-down provisions of Section 1129(b).  Nor is Campbell Company seeking to modify the Campbell on McGregor, LLC debt in violation of 11 U.S.C. § 524(e).  Polara's argument has no basis.

## 2. RESPONSE TO "SECTIONS 1129(a)(3) AND 1129 (a)(10): GOOD FAITH AND IMPAIRED CLASSES"

CLASSIFICATION OF CLAIMS

Polara argues that its claim has been improperly classified differently from other unsecured general claims. The threshold question is whether or not the claims are substantially similar. 11 U.S.C. § 1122(a). "The Ninth Circuit has determined that the bankruptcy judge 'must evaluate the nature of each claim, i.e., the kind, species, or character of each category of claims.'" *In re Loop 76, LLC*, 465 B.R. 525, 536 (9th Cir. BAP 2012). "Because § 1122(a) mandates that dissimilar claims may not be placed into the same class, if the bankruptcy court determines that the claims are not substantially similar, the inquiry ends there." *Loop, id.* at 536. In this case, the Polara claim and the general unsecured creditors' claims are not at all similar to each other.

Campbell Company has not created an artificial or "gerrymandered" class, by placing the unsecured general claimants, and the impaired claim of Wells Fargo Bank, in claims different from that of Polara. About the only thing similar to the Polara claim and the trade creditors are that they are unsecured. There are many ways that they are different. The Polara claim was acquired involuntarily, while the trade creditors provided goods or services to Campbell Company. The Polara claim is many times larger in amount than the trade creditors' claims. The Polara claim is on appeal, thus is unliquidated and disputed while the trade creditors' claims are not opposed in character or amount. The Polara claim is a claim for which the claimant will not have an ongoing business relationship with Campbell Company, whereas the trade creditors will have current and ongoing business relationships, both now, and after confirmation. The Polara claim will bear interest, while the trade creditors receive no interest. A similar situation was recognized in the case of *In re Zaruba*, 384 B.R. 254, 262 (Bankr. D. Alaska 2008). An actively disputed claim was allowed to be classified differently from the general unsecured claims.

> The separate classification of HTC's claim was not proposed solely to secure the vote of an impaired class of claims. Rather, it was proposed as a means of dealing with the estate's only actively disputed claim and in lieu of a state court supersedeas bond. Confirmation of the plan will not be denied because the debtors separately classified HTC's unsecured claim.

*Zaruba, id.* at 262. There are many other reasons why the Polara claim should be classified differently. The payment proposed to Polara is made over 6 years and through an escrow company, which will retain such funds until the outcome of the Appellate Proceeding is determined. There is no contingency on the payment of the unsecured general claims; they are to be paid within 90 days of the bankruptcy effective date.

In the case of *In re Johnston*, 21 F.3d 323 (9th Cir. Ct. App. 1994), the Ninth Circuit Court of Appeals, in affirming a 9th Circuit BAP decision, upheld a separate classification of a claim as non-violative of 11 U.S.C. § 1122(a) when:

> (1) Steelcase alone, of all creditors, holds a security in the assets of COS thereby creating different rights; (2) *Steelcase's claim is currently being litigated, which may confer rights separate from all other unsecured creditors;* and (3) if Steelcase is entitled to payment as a result of the litigation with Johnston, Steelcase could be fully paid before other unsecured creditors.

*Johnston, id.* at 326. [Emphasis added]. The distinction of the fact that the Polara claim is currently on appeal, and will have been argued by the time this case comes for confirmation, is important. The claim can go down in amount. Polara does not argue that the claim does not need to be paid over time, only requests a shorter time.

It must be remembered that there is another class that is impaired, that has voted in favor of the Plan. The Class 1b claim of Wells Fargo Bank is being paid off over time, likely 24 months, and represents an impaired claim. Wells Fargo, on behalf of the 1b claim, voted in favor and accepted Campbell Company's Plan of Reorganization. The court in *In re Mountain Machinery Co.,* 448 B.R. 1, 6, 7 (Bankr. D. Az. 2011) considered a similar argument of

**RESPONSE TO OBJECTION**
**TO CONFIRMATION -8**

gerrymandering when another impaired class had also accepted the plan other than the class argued that should be combined. "But the gerrymandering analysis does not apply on these facts, for two reasons; the claims are not substantially similar under Ninth Circuit law, and the separate classification is not necessary in order to satisfy Code § 1129(a)(10) and therefore not 'gerrymandering.'" *Red Mountain, id.* at 6. Thus, there is a dissimilar impaired claim accepting the Plan, Wells Fargo, *and,* based on the facts, the unsecured general claims at 2b are substantially dissimilar from the Polara claim. "Here, the court finds as a fact that the deficiency claim of Comerica and the general unsecured claims are not substantially similar. This factual finding is based on the undisputed facts that . . . (2) Comerica's deficiency claim, unlike all the other unsecured claims is embroiled in litigation with the Debtor . . .." *Red Mountain, id.* at 7. There is no gerrymandering here, and the Campbell Company Plan classifications must stand.

BAD FAITH FILING

In addition to allegations of "gerrymandering," Polara argues that the bankruptcy was filed in bad faith as avoiding the payment of a supersedeas or appeal bond. Campbell Company has already shown there has been no gerrymandering, and no "manufacturing" of another impaired class. Thus, the remaining argument is that this was a bankruptcy was filed solely to avoid paying a supersedeas or appeal bond. This is simply not true, and Phil Tate has testified he was unable to obtain a bond. Thomas South, the company CPA, has testified that it was his knowledge that a bond was not able to be obtained, and Campbell Company has provided, through discovery, documentation from the bank that a bond was not available. In addition, the Campbell Company has provided, through discovery, a copy of an appraisal done on behalf of Wells Fargo Bank, prior to requesting the appeal bond, that shows the Campbell Company assets were far less than would have been needed to secure the appeal bond. With all of this, Polara

**RESPONSE TO OBJECTION
TO CONFIRMATION -9**

still argues that the bankruptcy was filed in bad faith. To the contrary, the bankruptcy was filed as the only means to keep the Dick Campbell Company alive.

"In order to determine good faith, a court must inquire into the totality of circumstances surrounding the plan, the application of the principles of fundamental fairness in dealing with creditors, and then decide whether the plan will fairly achieve a result consistent with the objectives and purposes of the Code." *In re Linda Vista Cinemas, LLC*, 442 B.R. 724, 737 (Bankr. D. Az. 2010). One of the factors cited in *Linda Vista*, *id.* at 735, was that the debtor has moved swiftly through the process. In this case, the bankruptcy was filed on June 14, 2017. The initial Plan and Disclosure Statement were filed on December 4, 2017 (Docket Nos. 79 and 80). This was less than six months from the petition date, thus it is argued here that Campbell Company has been moving swiftly through the processes here.

Another factor of good faith is the Plan's proposal as to Polara. The Plan proposes to pay Polara the full amount of its claim, whatever is finally determined after the Appellate Proceeding is continued. If the full amount of the judgment is upheld, it will be paid. Another factor as to the good faith of Campbell Company is its relationship with the U.S. Trustee's Office and with other creditors. Campbell Company has timely filed its monthly operating reports, and has paid its quarterly fees. When inquiry was made from the U.S. Trustee's Office as to explanation of items within the schedules, or on the ongoing monthly operating reports, open and transparent responses were given on a timely basis.

Nor is the fact that this could be called a two-party dispute determinative of bad faith. "Admittedly, this case is essentially a two-party dispute with Musser's being the largest unsecured creditor, but this alone cannot constitute a bad faith filing by the debtors under § 1112(b) and, therefore, the motion to dismiss should be denied." *Matter of Hulse*, 66 B.R. 681, 682 (Bankr. M.D. Fla. 1986). *See,* also *In re Zaruba*, 384 B.R. 254, 262 (Bankr. D. Alaska

2008) (Actively disputed claim and in lieu of a State Court supersedeas bond); *In re Johnston*, 21 F.3d 323, 326 (9th Cir. Ct. App. 1994) (Creditor's claim currently being litigated). "In the instant case, Debtor had no ability to put up a supersedeas bond, had no cornucopia of cash, and has not attempted to move the State Court litigation to this Court." *In re Hyatt*, 479 B.R. 880, 892 (Bankr. D. N.M. 2012).

> Given this approach, this Court believes that the better recent cases are those that hold that the mere filing of a chapter 11 petition to avoid the need to file a supersedeas bond, relying on instead of the automatic stay to prevent collection activities, is not by itself bad faith or a reason to convert or dismiss the chapter 11 case.

*Hyatt, id.* at 896. This is further supportive, moreso since Campbell Company did not file the bankruptcy to avoid obtaining a supersedeas bond; it could not obtain a supersedeas bond, given its financial condition.

It should be noted that the docket of this proceeding is void of any motions to dismiss being filed by the Office of the United States Trustee, any creditor or Polara. It would seem that any argument of a bad faith filing has been waived by Polara, and should not be considered by the Court at confirmation. Nor is there any showing of bad faith within the Plan.

### 3. RESPONSE TO "SECTION 1129(b) UNFAIR DISCRIMINATION"

Class 2b claims are made up of 19 claims in total $76,754.39. Nine of the Class 2b claims are less than $1,000.00. Class 2a is the Polara Engineering, Inc. claim in the amount of $1,696,017.43. Doing the math shows that the Class 2b claims are roughly 4% of the Polara claim. Thus, there is a substantial distinction in the amount of the claim.

Further, Class 2b claims consist only of suppliers and other entities for which Campbell Company makes use of during the course of its operations, manufacturing, and selling functions. Campbell Company has made the business decision that these claims should be paid off first, and not stretched out over six years due to their small size in comparison to Polara, their ongoing use

or relationship with Campbell Company, and, to equalize will not pay interest on these claims. They will be paid off within 90 days of the effective date, as funds become available.

    The six year payoff to Polara is justified under the circumstances. It is a huge claim, the largest this company has ever had, and it must be paid off in a fashion that does not jeopardize the viability of the company. It must be remembered that if the Appellate Proceeding results in this claim being reduced, such claim will be paid that much quicker. The six years is only going to come into effect if the full amount, $1,696,017.43, is finally determined to be liquidated. So, there is a reasonable basis for the delineation between these two Classes, and their separate treatment in the Plan. As was quoted in *In re Ambanc La Mesa Ltd. P'ship,* 115 F3d. 650, 653 (9th Cir. 1997):

> The bankruptcy court must confirm a Chapter 11 debtor's plan of reorganization if the debtor proves by a preponderance of the evidence either (1) that the plan satisfies all thirteen requirements of 11 U.S.C. § 1129(a), or (2) if the only condition not satisfied is the eighth requirement, 11 U.S.C. § 1129(a)(8), the plan satisfies the 'cram-down' alternative to this condition found in 11 U.S.C. § 1129(b), which requires that the plan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the plan.

*Id.,* at 653. *See,* also *Smitty Inv. Grp., LLC,* 2008 WL 2095523 at *4 (Bankr. D. Id. May 16, 2008), and *In re Cady,* 2007 WL 2215384 at *2 (Bankr. D. Id. July 30, 2007). The discrimination here has a reasonable basis. The general unsecured creditors are a mere fraction of the amount to be paid to Polara. Polara's claim due to its large amount must necessarily be paid off over time. Conversely, the business decision to pay the small unsecured general claims first will retain loyalty that is necessary for the continued operation of this business, and such continued operation will ensure payment of Polara's claim. It would be impossible to pay off the Polara claim in 90 days, as is proposed for the general unsecured claims. Conversely, it would make no sense to pay the general unsecured claims, within an escrow arrangement, and over a

**RESPONSE TO OBJECTION
TO CONFIRMATION -12**

six year period of time. The discrimination here is not unfair, but is made using reasonable business judgment.

### 4. RESPONSE TO "SECTION 1129(b): FAIR AND EQUITABLE"

INTEREST RATE

Campbell Company's Schedules show total assets at $2,632,129.19, and total liabilities at $2,737,668.21. (Voluntary Petition, Docket No. 1). Pursuant to the definition of "insolvent," at 11 U.S.C. § 101(32)(A), this would characterize Campbell Company as being insolvent. This is important for the determination of what interest rate applies.

Under the law set forth in *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002). An unsecured creditor was deemed entitled to interest at the Federal Post-Judgment Interest Rate, when a debtor was solvent. *Cardelucci, id.* at 1234, citing *In re Beguelin,* 220 B.R. 94, 99 (9th Cir. BAP 1998). "In addition to promoting fairness among creditors, application of the federal rate is the most judicially efficient and practical manner of allocating remaining assets." *Cardelucci, id.* at 1236. To satisfy the best interest of creditors test, post-petition interest must be paid to unsecured creditors. *In re Ogle,* 261 B.R. 22, 27 (Bankr. D. Id. 2001). The Debtor here has proposed interest at the Federal Post-Judgment Interest Rate.

Where a bankruptcy estate is insolvent, debtors have made arguments that *lesser* rates of interest than the Federal Post-Judgment Interest Rate would be applicable. In the case of *In re Sanitec Industries, Inc.*, 2009 WL 7809007 *10-12 (9th Cir. BAP November 19, 2009). A plan was confirmed with a "compromised interest rate," which in that case was less than the Federal Post-Judgment Interest Rate when the debtor was insolvent.

> More importantly, we conclude that the Bankruptcy Court did not err in approving the compromise interest rate for purposes of the 'best interest of creditors' test under § 1129 (a)(7). . . . That is, the plan must 'provide non-consenting impaired creditors with at least as much as they would receive if the debtor was liquidated in chapter 7.'

RESPONSE TO OBJECTION
TO CONFIRMATION -13

*Sanitec, id.* at *11. In *Sanitec*, the Federal Post-Judgment Interest Rate at the time was 5.02%, and the interest rate proposed and accepted by the Bankruptcy Court was 1.5% per annum. In the instant case, it is unclear if Campbell Company is solvent or insolvent, since the amount of the Polara claim is in question. However, Campbell Company proposes to pay Polara the Federal Post-Judgment Interest Rate in effect at the date of filing. It is made clear that this applies to the date of the filing of the petition. This interest rate, under extant Ninth Circuit law, is satisfactory to comply with the best interests of creditors test at § 1129(a)(7).

ABSOLUTE PRIORITY RULE

The question under the Absolute Priority Rule analysis is whether or not Polara is receiving its money, or money's worth, under the Plan. As was argued in prior argument, the interest rate is sufficient. Polara is being paid the full amount of its claim. While the Plan proposes the Tates' retain their stock, there will be no payments to the shareholder Phil Tate, other than his set salary, which will not be increased.

The feasibility of the Plan is also so very important. The Plan proposes payment over a six year period of Polara's claim, with interest. If the interest rate is sufficient, this would appear to be enough to show that the Polara claim is "provided for" in a manner considered as receiving property with a present value equal to the allowed amount of the claim. 11 U.S.C § 1129(b)(1)(B). *See, In re Johnston,* 140 B.R. 526, 530 (9th Cir. BAP 1992). (The dissenting creditor need not be paid in full on the effective date, as long as its claim is properly provided for). The fact that the Plan conservatively pays off the Polara claim over six years should not be held against it; this should further the fact that this claim will be paid in full. Three years would put the company at risk and the feasibility of the Plan as well. "[T]he Absolute Priority Rule applies only to unsecured classes, not to secured claims, the requirements for which are

**RESPONSE TO OBJECTION
TO CONFIRMATION -14**

separately set forth in § 1129(b)(2)(A), which says nothing about the time of repayment nor any comparison to the treatment of other class." *In re Linda Vista Cinemas, LLC,* 442 B.R. 724, 753 (Bankr. D. Az. 2010), citing *In re Cypresswood Land Partners I,* 409 B.R. 396, 437 (Bankr. S.D. Tex. 2009). Polara is fairly treated, its claim will be paid in full with an appropriate rate of interest over a reasonably feasible period of time. The Absolute Priority Rule is not violated.

### 5.  RESPONSE TO "OTHER OBJECTIONABLE PLAN TERMS"

Campbell Company agrees to the definition of Appellate Proceeding as being the conclusion of the appeal of the U.S. Court of Appeals for the Federal Circuit, Case No. 17-194, as the commencement date of Plan payments from escrow to Polara. Campbell Company does not agree, and cannot bind Campbell on McGregor, LLC to add Campbell Company to the title to the real property. Except as argued on the brief, there is no alter ego issue now before the Court, which names Campbell on McGregor, LLC as a necessary party so that Campbell Company can somehow be deemed the owner of the property titled and owned by Campbell on McGregor, LLC.

Campbell Company does not agree to the securing of the escrow funds in favor of Polara, and with appropriate defaults and acceleration provisions, which are undefined, being added to the escrow agreement. It is believed that the escrow agreement and relationship itself, which under the Plan states it will be located in Boise, Idaho, at a licensed, bonded, and insured escrow company mutually agreed to by Campbell Company and Polara, will provide enough protections for Polara. However, re-characterizing Polara as a *secured creditor* as to such funds is not agreed to, and, again, would seek to give priority to Polara, an unsecured creditor, over other unsecured and even secured creditors. With respect to the request for default and acceleration provisions, the bankruptcy Plan, once confirmed, is a contract between Campbell Company and

**RESPONSE TO OBJECTION
TO CONFIRMATION -15**

its creditors, including Polara, which should be sufficient without default and acceleration provisions.

Campbell Company does not oppose including Plan provisions that limit Campbell Company from selling, transferring and encumbering Campbell Company's assets greater than what existed as of the date of the bankruptcy filing, until the claims are paid in full, and to subordinate the debts of insiders to the creditors' claims.  Campbell Company further would agree to add the provision that no additional loans or bonuses be made to insiders, until creditors are paid, and that no further loans to insiders, or increase of loans, be made.  With respect to paragraph 6.5 of the First Amended Plan of Reorganization, it is unclear what is objectionable to Polara, however, Campbell Company is agreeable to alter such language depending on the requested change.

In addition, Campbell Company has agreed with Wells Fargo to alter Class 1b to read as follows:

> <u>Class 1b:</u>  The Secured Claim of Wells Fargo Bank, N.A., Line of Credit Promissory Note 8639 in the amount of $444,972.35 secured by all property of the Estate, which property will be vested in the Reorganized Debtor in accordance with Paragraph 6.1 of the Plan.  Class 1b claimant shall retain its liens on all personal property of the Estate without further action, and receive monthly payments of $19,323.00 amortized at 4.0% until paid in full.

### III. CONCLUSION

For the reasons set forth herein and as set forth in the record, the Debtor respectfully asserts that the First Amended Plan of Reorganization proposed by Dick Campbell Company satisfies all of the requirements under both § 1129(a) and (b).  Further, confirmation of the Campbell Company Plan is in the keeping with the fundamental purpose of Chapter 11 "to prevent a debtor from going into liquidation" and "to permit successful rehabilitation," of the

**RESPONSE TO OBJECTION
TO CONFIRMATION -16**

Debtor.[1]  Confirmation of Campbell Company's Plan will allow the Debtor to reorganize and to (1) repay Polara, in full with interest, (2) repay its other creditors, (3) avoid loss of jobs, and (4) remain a viable and operating business in Boise, Idaho, and within the United States.  Campbell Company's First Amended Plan of Reorganization should be in all respects confirmed, with modifications made as represented and included in the Order of Confirmation.

DATED this 6th day of April, 2018.

ELSAESSER ANDERSON, CHTD.

*/s/ Bruce A. Anderson*_____
Bruce A. Anderson
Attorney for Debtor-in-Possession

---

[1] *National Labor Relations Board v. Bildisco,* 465 U.S. 513, 527 and 528 (1984).

**RESPONSE TO OBJECTION
TO CONFIRMATION -17**